UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| CATHERINE JONES | CIVIL ACTION NO: |
|---|---|
| VERSUS | 16-CV-340-JWD-RLB |
| BLUE CROSS BLUE SHIELD OF LOUISIANA | |

## RULING AND ORDER

Before the Court are two motions to exclude expert testimony filed by Louisiana Health Service and Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana ("Defendant" or "Blue Cross"): one to exclude the report and testimony of expert witness Jane Bernhardt offered by plaintiff Catherine Jones ("Jones" or "Plaintiff") and the other to exclude the report and testimony of Plaintiff's expert witness Louis Lipinski (Docs. 22 and 23, respectively). For the reasons which follow, both motions are granted in part and denied in part.

## BACKGROUND

Plaintiff was a Medical Review Nurse hired by Blue Cross. In July 2013, she suffered a stroke. As a result of the stroke, she suffered, among other things, a specific kind of partial vision loss called right homonymous hemianopsia in which the right side of her field of vision is completely void.

Plaintiff returned to work at Blue Cross in August 2013. In December 2014 she resigned; she sought reinstatement, but her request was denied. Plaintiff claims that Blue Cross failed to reasonably participate in the interactive process, failed to provide her with reasonable accommodations and constructively discharged her, all in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. Blue Cross denies these claims and insists that it acted legally at all times and complied with its obligations under the ADA.

## MOTION TO EXCLUDE JANET BERNHARDT (DOC. 22)

Janet Bernhardt is a Certified Low Vision Therapist whose report is attached to Blue Cross's motion (Doc. 22-1). Portions of her February 16, 2017 deposition are found at Docs. 22-4 and 25-6.

In her report, Bernhardt describes the documents she reviewed, the test that she performed and describes the "visual affects" of Plaintiff's right homonymous hemianopsia. She also lists 14 symptoms from which Plaintiff suffers which are listed on Low Vision Centers of Indiana's homonymous hemianopsia symptom checklist as well as another "cluster of deficits" associated with this condition. Among other conclusions reached, Ms. Bernhardt states that "if Ms. Jones would have had the following after her vision loss, she would have been able to keep up with productivity and retain her job . . . " and then lists eight actions, with sub-parts, which allegedly could have been taken to ameliorate the effects of Plaintiff's condition.

In its motion, Blue Cross seeks to exclude Ms. Bernhardt's report and testimony for the following reasons:

1. She is not qualified to give the opinions, and specifically, not qualified to opine "as to what constitutes a reasonable accommodation, a disability, or an essential job function." (Doc. 22 at 1 and 22-7 at 14.)

2. Her opinions are based on insufficient facts;

3. There were "no analytical methods related to the facts of the case," (Doc. 22 at 1-2), and Bernhardt's opinions are "speculative and untested." (Doc. 22-7 at 11.)

4. To the extent admissible, the probative value of her opinion is substantially outweighed by the dangers of unfair prejudice and waste of time. (Doc. 22 at 1-2; Doc. 22-7 at 16-17.)

In addition, in briefing, Blue Cross adds another complaint:

5. Bernhardt gives "unsubstantiated legal opinions." (Doc. 22-7 at 16-17.)

The Court will address each of these issues separately.

## STANDARD

Pursuant to Federal Rule of Evidence 702, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if the rule's preconditions are met.

Blue Cross's motion is a *Daubert* challenge based principally on Bernhardt's alleged failure to use an accepted methodology and her alleged lack of an adequate factual foundation. *See Daubert v. Merrell Dow Pharmaceuticals, Inc*. 509 U.S. 579 (1993). When *Daubert* is invoked, a district court may, but is not required to, hold a hearing at which the proffered opinion may be challenged. *Carlson v. Bioremedi Therapeutic Sys., Inc*., 822 F.3d 194, 201 (5th Cir. 2016). However, when no hearing is held, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry." *Id*. "At a minimum, a district court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting expert testimony.'" *Id.* (quoting *Rodriguez v. Riddell Sports, Inc.,* 242 F.3d 567, 581 (5th Cir. 2001)).

The role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is sufficiently reliable. As the Fifth Circuit has held:

> [W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case. *Daubert* went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance." The [Supreme] Court summarized:

> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability-of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997) (internal citations omitted).

Cases following *Daubert* have expanded upon these factors and explained that *Daubert*'s listing is neither all-encompassing nor is every factor required in every case. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Indeed, courts may look to other factors. *Joiner*, 522 U.S. at 146.

As this Court has explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

*Fayard v. Tire Kingdom, Inc.*, 2010 WL 3999011 at *1 (M.D. La. Oct. 12, 2010) (internal citations omitted) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)).

This Court has broad discretion in deciding whether to admit expert opinion testimony. *See, e.g.*, *Joiner*, 522 U.S. at 138-39 (appellate courts review a trial court's decision to admit or exclude expert testimony under *Daubert* under the abuse of discretion standard); *Watkins*, 121 F.3d at 988 ("District courts enjoy wide latitude in determining the admissibility of expert testimony."); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence.").

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (citing Fed. R. Evid. 702 Advisory Committee Note (2000 amend.)). Further, as explained in *Scordill v. Louisville Ladder Grp., L.L.C.*:

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"

2003 WL 22427981 at *3 (E.D. La. Oct. 24, 2003) (Vance, J.) (internal citations omitted) (relying on, among others, *Rock v. Arkansas*, 483 U.S. 44, 61 (1987), and *United States v. 14.38 Acres of Land, More or Less Sit. In Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

The Supreme Court has recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho*, 526 U.S. at 150, *cited with approval in Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).

In that vein, the Fifth Circuit has concluded that "soft sciences" involve "necessarily diminished methodological precision" when compared to other scientific disciplines like mathematics and engineering. *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006) (quoting *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1297 (8th Cir. 1997)).

> In such instances, other indicia of reliability are considered under *Daubert*, including professional experience, education, training, and observations. Because there are areas of expertise, such as the "social sciences in which the research theories and opinions cannot have the exactness of hard science methodologies," trial judges are given broad discretion to determine "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case."

*Id.* (internal citations omitted) (relying on *Pipitone*, 288 F.3d at 247).

## BERNHARDT'S QUALIFICATIONS

Ms. Bernhardt is a certified Low Vision Therapist who has a B.S. in elementary education and obtained her certification in low vision therapy from the Pennsylvania College of Optometry. (Doc. 22-7 at 6.) She has testified as Low Vision Expert in a New Jersey court and acted as a consultant to U.S. Department of Justice in an investigation of a New Mexico school for the blind that did not provide Braille instruction. (*Id.* at 14.) She has attended workshops in which the ADA and an employer's obligation to accommodate an employee were covered as a subject. She has not testified as an expert in an ADA case.

Plaintiff argues that, while Blue Cross attacks Bernhardt's qualifications to render an opinion about "reasonable accommodations" or "essential job functions," Ms. Bernhardt never uses those terms. Plaintiff also argues that Ms. Bernhardt is well-qualified to give the opinions posited in her report.

Federal Rule of Evidence 702 requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the court may admit the expert's testimony and then leave to the jury the extent of those qualifications. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 506 (5th Cir. 1999), *superseded by statute on other grounds*. The Supreme Court in *Kumho Tire*, 526 U.S. at 148-149, 156, and *Daubert*, 509 U.S. at 592, endorsed expert testimony based on personal observation and experience.[1] Additionally, the 2000 Advisory

---
[1] *See also, LeBlanc v. Chevron USA, Inc.*, 396 F. App'x. 94, 100 (5th Cir. 2010) (per curiam) (unpublished).

Committee Notes to Rule 702 state, "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience" which may be the "predominant, if not sole, basis for a great deal of reliable expert testimony."

If the expert's testimony does not rest on traditional scientific methods, the court may permit testimony "where a proposed expert witness bases her testimony on practical experience rather than scientific analysis." *Davis v. Carroll*, 937 F. Supp. 2d 390, 412 (S.D.N.Y. 2013). "In such cases . . . courts recognize that experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience.'" *Id*. at 412 (quoting *Kumho Tire*, 526 U.S. at 149–50); *see also Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001). ("[T]here is no question that an expert may still properly base his testimony on 'professional study or *personal experience*.'" (emphasis added)); *Watson v. Snap-On Tools, Inc*., 2006 WL 2114558 at *5 (W.D. La. July 26, 2006).

The Court finds that Bernhardt's qualifications are sufficient to allow her to testify as to the opinions in her report. She is formally trained in her field and certified, has acted as consultant for the Department of Justice,and been accepted as an expert witness. The fact that she has relatively little experience as an expert witness is not grounds for disqualification. The courts have rejected the notion that the Federal Rules of Evidence require an expert to have previously opined on a specific issue to be "qualified" as an expert on that issue. *See, e.g., BP Exploration & Prod., Inc. v. Callidus Techs, L.L.C.*, 2003 WL 26118097 at *1–2 (E.D. La. Apr. 8, 2003). Furthermore, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Carlson*, 822 F.3d at 199 (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

## METHODOLOGY AND FOUNDATION FOR OPINION

Bernhardt conducted an in-person assessment of Plaintiff which included an interview and "low vision assessment," including various vision tests. She also reviewed Plaintiff's medical records. While Bernhardt's report is bare bones, to say the least, when viewed together with her deposition,[2] the methodology and analysis used by Bernhardt to reach her conclusions can be ascertained.

---

[2] Numerous cases have declined to exclude an expert where matters outside an expert report were discussed at a deposition, where an opportunity to re-depose the expert was offered, and/or where a continuance was allowed. *See, e.g., Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1203–04 (8th Cir. 2015) (affirming district court's finding that the untimely disclosure of a supplemental report (concerning a field study conducted on the morning of the expert's deposition) was "substantially justified and . . . harmless" because "[t]he record indicate[d] [plaintiff] fully deposed [the expert] with respect to the field study and never requested the opportunity to take a supplemental deposition" and because [plaintiff] "fail[ed] to identify any information in the report that took her by surprise or that she needed to discuss with [the expert] in more detail" (citations omitted)); *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 888–89 (8th Cir. 2006) (finding no abuse of the trial court's discretion because: "While [the expert] did not include his reliance on x-rays in his pretrial disclosure, he did discuss these x-rays during his deposition. Therefore, [plaintiff] was on notice that [the expert] might rely on these x-rays during his trial testimony. A harmless violation of Rule 26 does not mandate exclusion of the evidence." (citation omitted)); *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 2014 WL 1664263 at *4 (E.D. Ky. Apr. 25, 2014) ("the preliminary nature of [the expert's] report does not require its exclusion and any risk of 'unfair surprise' or 'ambush at trial' has been mooted by the later deposition."); *Franklin v. United States*, 2014 WL 11497835 at *12–13 (D.N.M. Feb. 18, 2014) (collecting cases on the issue and holding that opinion elicited from expert during deposition that was not reflected in his expert report was "harmless" and did not create "unfair surprise"); *Bracey v. Jolley*, 2012 WL 12870257 at *4 (N.D. Ga. Aug. 3, 2012) (the deficiency in the expert report was harmless because, during the deposition, the "Defendants were able to elicit the sources upon which [the expert] relied"); *E.E.O.C. v. Freemen*, 626 F. Supp. 2d 811, 822 (M.D. Tenn. 2009) ( "In the present case, both of the deficiencies alleged by Defendant represent, at worst, instances of harmless error. Dr. Cohen's deposition remedied any failures to disclose within the Report. . . . [I]n the present case, Defendant's [sic] submitted their Motion to Strike Expert Report and Testimony after Dr. Cohen's deposition, arguing that Defendant suffered prejudice in its inability to prepare for cross-examination at trial. Accordingly, the Rule 26(a)(2) purpose of reducing the need or length of expert depositions is moot in this case. The relevant purpose of Rule 26(a)(2) is thus notice to Defendant pending trial, and under these circumstances, the Court finds that deposition disclosure may be curative." (citations omitted)); *Atkins v. Cty. of Orange*, 372 F. Supp. 2d 377, 397 (S.D.N.Y. 2005) (allowing expert doctor to testify despite "deficient" report and failure to comply with Rule 26 because, among other reasons, (1) the expert's "testimony [wa]s essential to plaintiff's case"; (2) because "plaintiffs annexed a declaration by [the expert] to their opposition papers further detailing her conclusions with respect to the care provided to each plaintiff and her bases for those conclusions; and (3) "plaintiffs [were] willing to make [the expert] available for deposition by defendants prior to trial if necessary."); *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 192 F.R.D. 511, 514 (D. Md. 2000) (changes of opinion made by the expert to his report during a subsequent deposition were not excluded as they were "both technically timely [under Fed. R. Civ. P. 26(e)], and sufficiently in advance of trial that [they] cannot fairly be characterized as ambush tactics" (citation omitted)); *cf. Iacangelo v. Georgetown Univ.*, 272 F.R.D. 233, 234 (D.D.C. 2011) ("Technically, all expert disclosures required by Rule 26(a)(2)(B) must be made in the expert's written report. . . . In practice, however, a party is considered to have met its obligations for expert disclosure so long as all required information is divulged in either the written report *or a subsequent deposition of the expert*," (emphasis added) (citations omitted), but striking plaintiffs' purported rebuttal supplemental report when they "filed [the supplement] two years after all expert discovery had closed and thus more than two years after they had received defendants' expert reports and had deposed those

**SUFFICIENCY OF FACTS AND DATA RELIED UPON**

Blue Cross criticizes Bernhardt's support for her opinions, suggesting that, for instance, she "did not bother to check and determine whether the accommodation she claims Blue Cross should have provided was even accommodation that Blue Cross could provide." Blue Cross points to Bernhardt's inability to "name a single person" who suffers from Plaintiff's condition who has been provided the accommodations by Louisiana Rehabilitation Services she claims Plaintiff should have been given. Blue Cross also criticizes Bernhardt for recommending the use of Kurzweil, a text-to-speech software, even though she admitted having no experience training people with vision loss in the use of the software.

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land More Or Less Situated in Lefore County, Miss.*, 80 F.3d at 1077 (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)); *see also Imperial Trading Co. v. Travelers Property Cas. Co. of America*, 2009 WL 2356292 at *3 (E.D. La. July 28, 2009). Furthermore, "[m]atters left for the jury's consideration

---

experts," when the supplement was filed less than one month before trial, and when there was no time to reopen discovery); *United States v. Roberts*, 830 F. Supp. 2d 372, 386-87 (M.D. Tenn. 2011) (finding that an expert was competent to testify under Fed. R. Evid. 702—despite the fact that his report was "troubling" to the Court for failing to provide the basis and reasons for his opinions—and stating: "While Rule 26(a) seeks to prevent 'ambush at trial' and to 'shorten or decrease the need for expert deposition, those concerns can become moot when a deposition is actually taken. Moreover, because one purpose of Rule 26(a)(2) is to provide notice, a 'deposition disclosure may be curative,' and a *Daubert* hearing can serve to elucidate the basis for an expert opinion." (citations omitted)).
*Gillum v. United States*, 309 F. App'x 267 (10th Cir. 2009) is perhaps the most persuasive case on this issue. There, the Tenth Circuit reversed the district court's exclusion of plaintiff's expert and granting of summary judgment because (1) "[b]eyond the inadequate report, the [defendant] had [the doctor's] deposition and [plaintiff's] response to the motion in limine, which discussed the reasons and bases for [the doctor's] opinion," and (2) because the plaintiff "had arranged for [the doctor] to be available for a second deposition." *Id.* As a result, "any prejudice accruing to the [defendant] from an inadequate opportunity to prepare for the first deposition was capable of being cured." *Id.* The Tenth Circuit powerfully reasoned: "The parties to a litigation are not merely players in a game, trying to catch each other out. Rather, litigation should promote the finding of the truth, and, wherever possible, the resolution of cases on their merits." *Id.*

include the alleged miscalculations, erroneous assumptions, and inconsistencies that plaintiffs object to." *Imperial Trading*, 2009 WL 2356292 at *3 (citing *Southwire Co. v. J.P. Morgan Chase & Co.*, 258 F. Supp.2d 908, 935 (W.D. Wis. 2007)). Here, Blue Cross's attack goes to the weight, not admissibility, of Bernhardt's testimony and, no doubt, will be the subject of vigorous cross-examination by counsel for Blue Cross where the sufficiency of this testimony should properly be tested.

However, there are two opinions Bernhardt gives which deserve closer evaluation. The first is that, had certain actions been taken by Blue Cross, Plaintiff "would have been able to keep up with productivity and retain her job." In its briefing, Blue Cross points out that "Bernhardt admitted she did not review [P]laintiff's job description for a Medical Review Nurse at Blue Cross prior to rendering her opinion in the report dated January 3, 2017. Importantly, she was made aware that there were certain production standards applicable to Plaintiff's employment; however, Ms. Bernhardt does not know what the standards were." (Doc. 22-7 at 15.) But, in looking closely at Bernhardt's actual testimony, she states that she did not need this information because, given Plaintiff's condition and what the suggested rehabilitation modalities would have been able to accomplish, "I know that she [could have] perform[ed] anything on a computer. She [could have] do[ne] any of those activities if she [had been] provided the proper equipment and the training that goes along with that equipment." (Doc. 22-4 at 16.) Thus there is a basis for her opinion and the sufficiency of that basis will be left to the jury.

Second, Bernhardt opines that "[i]f [Plaintiff] had received the proper referral, equipment and training she would be living a life much like the one she had before her stroke and vision loss." There is evidence that Plaintiff has medical issues that go far beyond those associated with vision loss. Bernhardt is not qualified to opine on how rehabilitation therapies would have

allowed Plaintiff to resume her pre-stroke life as it pertains to medical conditions other than vision loss. To that extent, Blue Cross's motion is granted.

## LEGAL CONCLUSIONS

Blue Cross charges that Bernhardt gives "unsubstantiated legal opinions," but it fails to identify specific legal opinions to which it objects. Presumably it is referring to a related charge that Bernhardt opines on "what constitutes a reasonable accommodation, a disability, or an essential job function." (*Id.* at 16.) But, as Plaintiff points out, Bernhardt does not use the terms "reasonable accommodation" or "essential job functions."

Federal Rule of Evidence 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." However, the Fifth Circuit has "repeatedly held that this rule does not allow an expert to render conclusions of law." *Snape-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir. 1996); *see also Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

"The task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one." *Owen*, 698 F.2d at 240. In *Owen*, the Fifth Circuit explained:

> The example given in the Advisory Committee Notes to Rule 704 is helpful. The question "Did T have capacity to make a will?" should be excluded. The question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" is permissible. The first question is phrased in such broad terms that it could as readily elicit a legal as well is a fact based response. A direct response, whether it be negative or affirmative, would supply the jury with no information other than the expert's view of how its verdict should read. Moreover, allowing an expert to give his opinion on legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant."

*Id*.

Blue Cross has pointed the Court to no specific "legal conclusion" that it argues Bernhardt makes. The Court, therefore, denies this portion of the motion but will entertain objections to any specific question at trial which asks for a legal conclusion.

**PROBATIVE VALUE VERSUS UNFAIR PREJUDICE AND WASTE OF TIME**

Blue Cross's final argument concerning Bernhardt is based on Federal Rule of Evidence 403, namely that any probative value of Bernhardt's testimony is outweighed by the danger of unfair prejudice or waste of time. The Court disagrees. The Court has reviewed the arguments, Bernhardt's report, and the attachments to the briefing, and the Court does not believe that these risks substantially outweigh the probative value of Bernhardt's opinion. Blue Cross is free to vigorously cross-examine Bernhardt and offer its own expert testimony on the issues in this case. It will be the jury's decision as to how much weight and value to give to the respective opinions.

**MOTION TO EXCLUDE LOUIS LIPINSKI (DOC. 23)**

Blue Cross also moves to Exclude Evidence (Report) and Testimony of Plaintiff's Expert Louis Lipinski (Doc 23), attaching the report at issue as Doc. 23-1.

Lipinski is a Certified and Licensed Rehabilitation Counselor. (Doc. 23-1 at 5.) He conducted a vocational evaluation of Plaintiff which consisted of reviewing Plaintiff's medical records and employment records, conducting a client interview, contacting the Job Accommodations Network and performing research regarding the ADA. (*Id*. at 1.) He reached the following conclusions:

1. Medical records demonstrate that Plaintiff "is a person with a disability."
2. Plaintiff's performance evaluations prior to 2014 demonstrate that she was able to perform the essential functions of the job of Medical Review Nurse for Defendant;

3. Employment records indicate that Blue Cross "did not engage in an interactive process designed to explore accommodation options, establish a trail period [sic] or monitor the accommodation."

4. Employment records indicate that Plaintiff was terminated because she failed to meet production requirements which arose from her disability. (*Id.* at 4.)

Blue Cross attacks Lipinski's opinions on essentially identical grounds to those utilized in attacking Bernhardt's opinions, namely:

1. Lipinski is not qualified to render his opinions;

2. His opinions are based on insufficient facts with no explanation of the analytical methods used and how they relate to the facts of the case;

3. He opines on ultimate issues solely within the province of the jury; and

4. To the extent that his opinion is otherwise admissible, its probative value is substantially outweighed by the dangers of unfair prejudice and waste of time. (Doc. 23 at 1-2.)

## STANDARD

The standard used by the Court in evaluating this challenge is the same as articulated in connection with the Bernhardt challenge and will not be repeated here.

## QUALIFICATIONS

Blue Cross "does not dispute Mr. Lipinski's qualifications as a psychologist or vocation rehabilitation counselor or his ability to render opinions as such." (Doc. 23-5 at 12.) However, according to Blue Cross, Mr. Lipinski is "not qualified to render the opinions he has proffered in this case regarding whether Plaintiff is qualified to perform the job duties of a Medical Review Nurse and meet production standards, the essential functions of . . . Plaintiff's job, that Plaintiff

is disabled under the Americans with Disabilities Act, what constitutes a reasonable accommodation or whether Blue Cross properly engaged in the interactive process." (*Id.*) However, other than to attack the merits of his report, *e.g.*, by claiming that Lipinski "makes no mention of the fact that Plaintiff stated she considered herself unable to perform any job duties as a result of her worsening health issues," (*Id.* at 11), Blue Cross generally does not explain why it feels that Mr. Lipinski is not qualified to render his opinions. Moreover, as the Court previously explained in ruling on Bernhardt's report, attacks on the merits of an expert's opinion are not properly the subject of a *Daubert* challenge and are the province of the jury. Mr. Lipinski is a well-qualified and very experienced vocational rehabilitation analyst and his opinions are well within the range of his expertise. Blue Cross's challenge in this regard is rejected.

## METHODOLGY

Blue Cross attacks Lipinski's methodology "because it is devoid of any supporting methodology or analysis." That simply is untrue. On the first page of Lipinski's report, he explains that he "conducted a vocational evaluation that consisted of review of medical information, review of employment records, client interview, contact with the Job Accommodations Network and research regarding the Americans With Disabilities Act."(Doc. 23-1 at 1.) As mentioned earlier, "soft sciences" involve "necessarily diminished methodological precision" when compared to other scientific disciplines like mathematics and engineering. *Simmons*, 470 F.3d at 1123. As stated by the Fifth Circuit in *Simmons*,

> In such instances, other indicia of reliability are considered under *Daubert*, including professional experience, education, training and observations. Because there are areas of expertise, such as the "social sciences in which the research, theories and opinions cannot have the exactness of hard science methodologies, trial judges are given broad discretion to determine whether *Daubert*'s scientific factors are, or are not, reasonable measures of reliability in a particular case.

*Id.* (citing *Pipitone*, 288 F.3d at 247).

Such is the case here. Mr. Lipinski uses standard methodology utilized by vocational rehabilitation experts conducting such inquiries, and the Court concludes that it is sufficiently reliable to withstand a *Daubert* challenge. This aspect of Blue Cross's challenge is rejected.

**OPINIONS REGARDING THE ULTIMATE ISSUE AND LEGAL CONCLUSIONS**

Blue Cross challenges Lipinski's conclusions that Plaintiff was able to perform the "essential functions" of her job; that Blue Cross "did not engage in an interactive process designed to explore accommodation options"; and that Plaintiff was terminated because of her disability." Blue Cross argues that these conclusions invade the province of the jury or are legal conclusions. As mentioned in connection with the ruling on Blue Cross's challenge to Bernhardt's testimony, the Fifth Circuit has made it clear that expert witnesses may not render "legal conclusions." However, the Advisory Notes and case law demonstrate that distinguishing between forbidden and permissible conclusions is not always easy and depends upon the specific questions that an expert is asked. As the Middle District of Pennsylvania observed in *Orner v. Nat'l Beef Packaging Co*., "jurors in ADA cases require a certain contextualization of the applicable law and the vocational practices the ADA has spawned, yet the ultimate determination as to liability must remain the jury's and the jury's alone." 2015 WL 8334544 at *7 (M.D. Pa. Dec. 9, 2015).

For reasons previously discussed, it is impossible to rule in advance on every possible question and formulation, but the Court provides this non-exclusive guidance. Mr. Lipinski will be allowed to give his opinion as to whether Plaintiff's condition disabled her from her job at Blue Cross and the manner in which it did. He will be allowed to describe the concept of "accommodation" and the interactive process and compare Blue Cross's conduct to it. He will be able to opine as to what accommodations Blue Cross might have made in Plaintiff's case and

whether, with those accommodations, Plaintiff would have been able to perform her duties as a Medical Review Nurse. He will not be allowed to give his opinion as to whether Blue Cross engaged in good faith in the interactive process or offered Plaintiff reasonable accommodations within the meaning of the ADA.

**PROBATIVE VALUE VERSUS UNFAIR PREJUDICE AND WASTE OF TIME**

The Court finds, with the restrictions imposed, Lipinski's report and testimony provide relevant information for the jury's consideration which is not outweighed by risks of unfair prejudice, confusion or waste of time.

**CONCLUSION**

To summarize, Blue Cross's motions in limine concerning the expert reports of Bernhardt and Lipinski (Docs. 22 and 23) are granted to the limited extent that Bernhardt may not opine that, "[i]f [Plaintiff] had received the proper referral, equipment and training she would be living a life much like the one she had before her stroke and vision loss," and Lipinski may not opine on whether Blue Cross engaged in good faith in the interactive process or offered Plaintiff "reasonable accommodations" within the meaning of the ADA. In all other respects, these two motions are denied without prejudice to objections to specific questions during trial.

Signed in Baton Rouge, Louisiana, on <u>January 29, 2018</u>.

                                                **JUDGE JOHN W. deGRAVELLES**
                                                **UNITED STATES DISTRICT COURT**
                                                **MIDDLE DISTRICT OF LOUISIANA**